## Heath *versus* Page.

*Statute of Limitations must be pleaded, or it is waived.—Contract for extinguishment of usurious mortgage, construed, with reference to time of pleading Statute of Limitations to action for taking usurious interest.—Right of court to construe written contract.—Release of right of action for taking usurious interest, not inferrable from general expressions of a desire to settle.—Remedy for taking usurious interest.—No title passes before delivery of deed.—What payment is necessary to sustain suit for taking usurious interest.*

1. A defendant who seeks to avail himself of the plea of the Statute of Limitations must plead it: otherwise the plaintiff has a right to presume a waiver.

2. Where a mortgagee agreed to satisfy a usurious mortgage on sale of the land bound by it by the mortgagor, if other good real security for the whole amount due on the mortgage, was provided, payable in ten years, the satisfaction of the mortgage, under the agreement, was not such a payment of the debt, that the Statute of Limitations would commence to run from its date.

3. Whether the satisfaction and discharge of the mortgage was a payment of the debt, is a question for the court, because deducible from the written agreement; and the refusal to submit the question of intention to the jury was not error.

4. Where the first mortgage given for the usurious consideration was replaced by a second, for the "whole debt," and pending proceedings upon it after judgment obtained, certain town lots, the separate estate of the wife of the mortgagor, were, by agreement signed by both and the mortgagee, agreed to be conveyed in full satisfaction and payment of the mortgage, which, on the execution and delivery of the deed, was satisfied; the conveyance of the lots was *held* a payment of the debt, so as to qualify the mortgagor to recover for the excess of the legal rate paid.

5. Testimony that the mortgagor, while proceedings were pending on the mortgage, expressed a desire to amicably close the controversy, is not evidence of a release of the right of action for the usury, where no words of such purport were used, nor consideration given, and the expressions would naturally have relation to the mortgage only; nor can the substitution of the new mortgage, the agreement to release it, and receive the conveyance of the town lots, have such an effect, where nothing indicative of an intention to release it was contained therein.

6. Where the agreement for the sale of the town lots, the separate estate of the wife, was signed but not properly acknowledged in the forms of law, her title did not pass, and hence there was no "payment" until made by the delivery of a properly-acknowledged deed; and where such delivery was within the six months prior to the institution of the suit, the action was not barred by the limitation of the act, though the agreement was executed more than six months before suit brought.

7. Where, as a cloak for the usury, worthless railroad stock was sold and transferred by the mortgagee to the mortgagor, to an amount equal to the sum loaned, and a mortgage taken covering the whole price of the stock and the loan, it was *held*, not necessary for the mortgagor to return or tender the stock before bringing suit; he had qualified himself for his action when he voluntarily paid the debt, and that was payment, which the mortgagee had accepted as such.

8. Case is a proper remedy for the recovery of an excess of interest paid upon a usurious contract.

[Heath v. Page.]

ERROR to the District Court of *Allegheny county.*

This was an action on the case brought by John H. Page against Elijah Heath, to recover the excess of interest over six per cent., paid by him to the defendant, on a loan of $5000.

The plaintiff alleged, and gave evidence tending to prove, that, in the winter of 1856, being greatly embarrassed in his pecuniary affairs, having judgments and mortgages against him amounting to some $35,000, and having real estate almost wholly unproductive, he applied to the defendant for a loan of money; that, on plaintiff agreeing to take one hundred shares of stock at par, amounting to $5000, in the Little Sawmill Railroad Company, which was entirely valueless at the time, the company being insolvent, the defendant agreed to loan him $5000 in money on receiving a mortgage from him and his wife for $10,000, on a large amount of real estate left to her by her father; that such was his necessity, that he was obliged to yield to this demand or suffer a great sacrifice by having his own property exposed to sale by the sheriff; that he took this stock, worthless as it was, for the sake of procuring the loan of $5000, which he received, and gave the mortgage required, which was executed and delivered on the 20th February 1856, and recorded the next day for $10,000, payable in six years, with interest payable semi-annually; that failing to meet the interest promptly as it became due, and falling in arrears to a considerable amount, and finding it extremely difficult to raise the amount necessary to pay the mortgage when it should fall due, by reason of his continued embarrassment, another mortgage was given, including the arrears of interest on the first, and covering different property. This mortgage was dated the 19th of January 1858, executed by Page and wife for $11,057, payable in ten years from the 24th of November 1857. Satisfaction was entered on the first mortgage, when the second was recorded.

This mortgage contained the usual provision, that on failure to pay the accruing interest for a given period it might be foreclosed, and the whole collected. The plaintiff fell in arrears with the interest on this mortgage also, whereupon the defendant placed it in the hands of his counsel, who brought suit thereon, and obtained judgment for $12,567.90. The writ was issued on the 20th of August 1861, and judgment entered on the 3d of September.

Meantime negotiations were set on foot, and sundry propositions in writing passed between the parties, for the payment of the mortgage in land, which led to an agreement executed on the 28th of August 1861, by which Page and wife agreed to convey certain real estate therein described, to Heath, in full payment and satisfaction of the mortgage; and in fulfilment of this agreement, by deed dated the 13th of December 1861, and ac-

[Heath *v.* Page.]

knowledged the 31st of the same month, they conveyed the several pieces of property therein described, which were received by Heath, and satisfaction entered on the mortgage on the 14th of April 1862.

The plaintiff alleged that the original transaction was a contract of loan, by which the defendant contracted for more than the legal rate of interest; that by taking advantage of his necessities, he compelled him to take this stock, which was utterly worthless; and therefore claimed to recover the excess in this action, the mortgage being, in effect, paid.

The defendant took several grounds of defence :—

1. He insisted that the original transaction was a sale of stock by the defendant, and a purchase by the plaintiff for his own benefit and that of his son-in-law, for the purpose of enabling the former to become the president, and the latter the treasurer or secretary, of the company, and therefore the contract was not usurious.

2. That the giving of the second mortgage, and the entry of satisfaction on the first, amounted to a payment of the original indebtedness, and the usury, if any, being then complete, the plaintiff not having brought his action within six months from that period, was barred by the Statute of Limitations from recovery.

3. That taking land instead of money in payment of the second mortgage, the plaintiff took the risk of its depreciation, and the whole transaction was to be regarded as an exchange of stock for land, and consequently the original contract was not usurious, and the plaintiff ought not to recover.

4. That the true construction of the agreement of August 28th, and the deed of December 1861, was, that there was a mutual discharge of each party by the other of all liabilities arising out of their preceding contracts, and therefore the plaintiff, having released his right of action, even if he had any against the defendant, for taking illegal interest, cannot recover.

5. That, even if the written agreement and deed before referred to were not sufficient in themselves to show a release of the plaintiff's right of action, yet, when coupled with the parol evidence of Mr. Keenan, who testified as to Page's anxiety to "have the whole controversy closed up," the whole would operate as a settlement and compromise, and the plaintiff cannot recover.

6. That an offer to retransfer the stock before suit is brought is a necessary prerequisite to the plaintiff's right to recover.

7. That the action should have been in debt and not in *assumpsit*.

There were several points presented by counsel, but the main question in the cause was, whether the original contract between the parties was usurious or not.

On this subject there was the testimony of a witness, together

with the books of the company, that Heath had transferred the one hundred shares of stock in question to Page about the time of this transaction; as also the testimony of one other witness, who said : "About the beginning of 1856, the defendant told me he had sold his stock to Mr. Page. I asked him at what price. He said he had sold it at par. I asked him how it was that he had sold it at par. He said, 'I had to sugar it.' I asked him what he meant by that. He said he lent Mr. Page a like amount in money, and took a mortgage on good real property for $10,000."

Another witness testified, "that in the summer of 1856, Heath told him he had parted with his stock; that Page wanted to borrow some money, viz., $5000—he had put his $5000 of stock with it, and made it 'palatable, or sweetened it.' I said, 'you don't expect Page to pay you $5000 for your stock ?' He said he had it secured by mortgage on property in East Birmingham belonging to Mrs. Page, of the Ormsby estate, well worth the money ; that he had Mr. and Mrs. Page for it in a mortgage on lots that were cheap at $10,000." This witness fixed the value of the stock, in the fall of 1855, at from one to five dollars a share.

The treasurer of the company at the time of this transaction, says he would not have given a dollar a share for the stock. He did not consider it worth anything. Other witnesses who were connected or acquainted with the affairs of the company were called to prove the worthlessness of this stock, and the insolvency of the company at that time.

The learned judge before whom the cause was tried (HAMPTON, J.), after stating the facts, charged the jury as follows :—

"If you believe that this was a loan of money, viz., $5000, with this stock put in at its par value, viz., $5000, when in truth and in fact it was not worth more than from $100 to $500, for the purpose of covering up the true character of the transaction ; this, taken in connection with the uncontradicted evidence that Page was greatly pressed for money—in very embarrassed circumstances—would, under the law as laid down by the Supreme Court in Fitzsimons v. Wallace, and many other cases, make the contract usurious ; and, so far as this ground of defence is concerned, the plaintiff is entitled to recover.

"So far as the facts are concerned, this disposes of the whole case, as I am of the opinion that the testimony of Mr. Keenan is insufficient to prove any such admissions of the plaintiff as would amount to a compromise, or release of his right to bring this action. This being the only parol evidence relating to that question, it devolves on the court to determine whether, by the true construction of the different instruments of writing between the parties, the plaintiff is or is not entitled to recover. We

[Heath *v.* Page.]

shall reserve these questions of law for the determination of the court *in banc*.

" The plaintiff's and defendant's counsel, each, withdraws his first point, and the court overrules, *pro forma*, the other points presented by defendant's counsel, which are reserved, and instruct the jury as follows :—

" If you believe, from the evidence, that the original transaction between these parties was a contract for the loan of money, at a greater rate of interest than six per cent. per annum, and that this stock was put in by the defendant, taking advantage of the plaintiff's necessities, at its par value, when it was almost worthless, then you may find for the plaintiff the amount fixed by the counsel on both sides, by the written agreement just read and filed, subject to the opinion of the court on the questions of law reserved, which are raised by the points presented by the counsel on both sides."

There was a verdict in favour of the plaintiff for $7400.

Subsequently, the court *in banc* (HAMPTON, P. J.) delivered the following opinion :—

" The jury have very properly found that the original contract was usurious, and we are now to determine whether, on the questions of law reserved, the plaintiff is entitled to judgment.

" The seventeen points presented by the learned counsel on both sides, so far as they have any legitimate bearing on the case, may all be reduced to three general questions, to wit :—

" First, Whether the plaintiff's right of action is barred by the Statute of Limitations ?

" Second, Whether he has compromised or released his right of action ?

" Third, Whether a payment in land is equivalent to a payment in money ?

" If any one of these questions should be decided against the plaintiff, he cannot recover, but if the law should be with him on all three, then judgment must be entered on the verdict.

" The first question arises out of the facts and circumstances attending the giving of the second mortgage and entering satisfaction on the first, and the construction of the agreement of August 28th 1861.

" The defendant's counsel contends that this was a payment of the usurious interest, and from that time the statute began to run. If this position be well taken the plaintiff must fail, for the first mortgage was satisfied January 29th 1858, and this suit was not instituted till 1862.

" That the satisfaction of this mortgage was not understood or intended by either of the parties as a payment of the debt secured by it, is abundantly manifest by the uncontradicted evidence in the cause. More especially is the defendant precluded

[Heath v. Page.]

from making such an allegation by his written agreement under seal, dated 24th of November 1857, which expressly declares the object to be to release the lien on the mortgaged premises, to enable Page to sell and convey the same. And it is well settled, that so long as the debt secured by the mortgage remains unpaid, the entry of satisfaction on the mortgage will operate only as a release of its lien, and destruction of the remedy upon it, as was held in Fleming's Executors v. Parry, 12 Harris 51, unless it was the intention of the parties that it should operate as an extinguishment of the debt. Here the contrary is clearly and distinctly shown by the proposition of the defendant already referred to.

"In Fleming's Executors v. Parry, Mr. Justice Woodward said, Had the mortgage been paid the law would treat the bond as paid; and, satisfied on record, the mortgage, though not paid, was thenceforth gone and all remedies on it. But was the bond also null? This depended on the understanding and intention of the parties as a jury should deduce them from all the circumstances in proof. The principle has been asserted in several cases that a change of securities does not necessarily work an extinguishment of the debt, and that extinguishment or satisfaction depends upon the agreement or intention of the parties, which must be referred to the jury as a question of fact. And in Richabaugh v. Dugan, 7 Barr 394, Mr. Justice Coulter says, 'It is the distinct agreement of the creditor to accept the thing in satisfaction and payment of the debt, which makes it good evidence under the plea of payment.' This rule is now the settled law of the land, notwithstanding the construction given to the case of Musgrove v. Gibbs, 1 Dall. 216, by the defendant's counsel. But it may be doubted whether, upon a careful scrutiny of that case, it will be found to be in conflict with the modern decisions. Ch. J. McKean's illustration of the rule by which they were governed in that case, is in perfect harmony with the later cases, when he says, 'It is well established that the receipt of one thing in satisfaction of another is a good payment, as the acceptance of a horse in lieu of a sum of money, or of a bond by a third person in discharge of a prior obligation.' See, also, Jones v. Johnson, 3 W. & S. 276; Eby v. Eby, 5 Barr 440; Mason v. Wickersham, 4 W. & S. 100.

"It was not necessary in the present case to leave it to the jury to determine what the intention of the parties was, as that was fixed and determined by the written proposal under seal of the 24th of November 1858, by the defendant, and the compliance therewith by the plaintiff in giving the mortgage proposed to be taken. No evidence was offered by the defendant to show that the second mortgage was taken and received in pay-

[Heath *v.* Page.]

ment of the debt secured by the first, and of course no such intention could have been inferred by the jury.

" The whole transaction can be regarded in no other light than as a change of securities without the slightest intention that it should work an extinguishment or satisfaction of the debt.

" For these reasons I am clearly of opinion that the Statute of Limitations did not begin to run when the first mortgage was satisfied.

" Nor was the agreement of the 28th of August 1861, a payment of the debt, from which period the running of the statute would commence. It was only a promise to pay, which was not fulfilled till the deed was executed and delivered, and satisfaction entered on the second mortgage, which was less than six months before this suit was brought.

" The law is therefore with the plaintiff on the first question reserved.

" Second. Did the plaintiff compromise, or in any way release his right to maintain this action ?

" It is not alleged that there is any express or positive proof on this subject, but it is contended that a compromise of all claims whatsoever, which either party might have against the other, is to be inferred from the evidence.

" A compromise implies the existence of a dispute wherein one party claims something which the other is unwilling to yield.

" In such cases the parties sometimes submit their claims respectively to arbitrators, and bind themselves to abide by their award. Sometimes they settle the controversy themselves, by each agreeing to give up a part of his claim. And the settlement of a controversy has always been held a sufficient consideration to support the contract. Where a debt is due and certain, and the debtor able to pay, there is no ground for compromise ; for in such cases a payment of a part will not discharge the whole, although the creditor may promise to release the residue, there being no consideration to support the promise.

" Here, neither the validity nor amount of the debt was ever disputed. The original contract being usurious, by the provisions of the Act of Assembly, Page might have claimed a deduction from the amount of the mortgage, to the extent of the excess of interest claimed, yet he did not choose to do so. The debt was fixed and certain, and had become due by the failure to pay up the interest, and there was therefore no controversy about the amount to be paid, nor the time of payment, and no propositions were made by either party on that subject. On the contrary, both parties treated it as a sum fixed and certain, to be paid to the last farthing. The only matter to be settled was the mode of payment, whether it should be in money or land at its cash value. The present defendant had the power to enforce

the payment in money, but he made the proposition to take land in payment at its cash value, and the only difficulty was to fix the valuation. After proposals on both sides to have the value fixed by third persons, the parties themselves agreed upon certain lots, that were to be conveyed and received in full payment and satisfaction of the claim within a certain time. And there was no attempt to prove, on the trial, that this land was not worth the amount due. If the, defendant could have shown that it was not worth the amount of his claim, it might have been a very important fact in his defence. We are bound, therefore, to conclude that he did not abate one jot or tittle of his claim in taking land instead of money. The agreement of the 28th of August 1861 shows conclusively that the payment of the bond and mortgage was the only subject of treaty between the parties at that time : and that agreement was carried out to the letter. No allusion whatever is made to any claim that Page might have against Heath, and no expression used from which any such an inference could be drawn as that now claimed.

"But it is contended that the testimony of Mr. Keenan, taken in connection with the written agreement of August 1861, and the entry of satisfaction on the judgment obtained on the second mortgage, shows a compromise of the plaintiff's right of action.

"After a careful examination of this testimony, which was accurately taken down at the time, I am unable to perceive any foundation for the assumption that the plaintiff surrendered his claim against the defendant. The only matter in hand was the removal of the encumbrances from the property to be conveyed. Nor can the phraseology employed in the entry of satisfaction, under all the circumstances, have the effect claimed for it by the defendant's counsel.

"The construction of the language there employed must be referred to the agreement of August 1861, and the conveyance made by the plaintiff in pursuance thereof. The defendant was bound by his contract to satisfy all claims he had under said mortgage and suit, in consideration of the deed for the land; so that in doing so, he was only fulfilling his part of the agreement, as the plaintiff had performed his in making the conveyance. There is no evidence that the plaintiff was present or knew what language he employed, and it can hardly be pretended that the defendant could make any new contract for the plaintiff by any set of words he might see fit to employ.

"Taking the whole evidence, therefore, both written and parol, and giving it the broadest construction that can be claimed for it, I am utterly unable to perceive any intention or agreement. on part of the plaintiff to compromise or give up any claim he might have to bring and maintain this action. For these reasons

[Heath *v.* Page.]

I am of opinion that the law is with the plaintiff on the second question reserved.

" Third. The only remaining question to be considered, is whether a payment in land is equivalent for the purposes of this action to a payment in money?

" This question involves the true construction of the 2d section of the Act of 28th May 1858, which is as follows:—

" 'That where a rate of interest for the loan or use of money exceeding that established by law shall have been reserved or contracted for, the borrower or debtor shall not be required to pay to the creditor the excess over the legal rate; and it shall be lawful for such borrower or debtor, at his option, to retain and deduct such excess from the amount of any such debt; and in all cases where any borrower or debtor shall, heretofore or hereafter, have voluntarily paid the whole debt or sum loaned, together with interest exceeding the lawful rate, no action to recover back any such excess, shall be sustained in any court of this Commonwealth, unless the same shall have been commenced within six months from and after the time of such payment.'

" To entitle the plaintiff to recover he must show, in the language of the law, that he voluntarily paid the whole debt or sum loaned, together with interest exceeding the lawful rate. Let us now inquire whether he has done so according to the true intent and meaning of the act?

" That the payment was voluntary cannot be denied, as no judgment was obtained against him at the date of the agreement, viz., 28th August 1861, and the only question is, whether the conveyance of this land was a *payment*, under the Act of Assembly? The defendant's counsel contend that nothing but a payment in money will meet its requirements.

" In the first place it may be remarked that *money* is not mentioned as the only means of payment. We are therefore left to construe the word payment according to its legal signification. Payment of a debt can only be made, if so required by the creditor, in the legal currency of the country. This provision, however, is made for the benefit of the creditor, a privilege which he may waive, and in lieu thereof may agree to take any other commodity, in satisfaction of the debt, which, if he receives in payment, the debtor is as fully discharged as if the payment had been made in gold or silver. Such is, and ever has been, the common understanding of the business world, and such has been the decision of all our courts from the earliest period of our legal history. Payment of a debt may therefore be made in any kind of property, real or personal, which the creditor agrees to take as such: Richabaugh *v.* Dugan, 7 Barr 394. And it is the constant practice in our courts to give in evidence, under the plea of payment, the performance of any service, or the delivery

[Heath *v.* Page.]

of any article of property, to the plaintiff which he agreed to take in satisfaction of his claim.

" By applying this rule to the case under consideration, we shall see whether or not it will avail the defendant.

" Heath held the mortgage of Page and wife for $11,057, dated the 19th of January 1858, payable in ten years from the 24th November 1857, on which a considerable amount of interest had accrued. The first proposition to take payment in land was made in writing by Heath, designating certain lots owned by Page and wife, at a valuation to be fixed by two competent and disinterested persons, one to be chosen by each party, and in case the referees could not agree, they to select an umpire, whose decision, or that of any two of them, should be final and conclusive.

" Next we have a proposition in the shape of an agreement, by Page and wife, dated the 10th of August 1861, offering to convey certain property, therein described, at a valuation to be fixed by two persons named, with privilege, in case of disagreement, to choose an umpire. On the same day Heath replied to this proposition by letter, declining their offer to have the valuation fixed by referees, but renewing his former offer to take thirty-two lots in a certain block, and one hundred and twenty feet off another lot. These negotiations were finally closed on the 28th of August by the written agreement of the parties, by which, after reciting the bond and mortgage, it was mutually agreed that the said Heath should receive, in full 'satisfaction and payment of all claims and demands against said Page and wife under and by virtue of said bond, mortgage, and suit,' certain real estate therein particularly described; and Page and wife agreed on their part to convey the same, clear of all encumbrances, in payment and discharge of the bond and mortgage. The conveyance was afterwards made and received, and satisfaction entered on the mortgage and judgment.

" Now, after the express agreement of the parties, that this land should be taken in full payment and satisfaction of all the defendant's claims under the mortgage, and that agreement fulfilled to the letter, it is gravely contended by the defendant's counsel that it was not a payment under the Act of Assembly. If it was not a payment, what was it? He proposed to take it in payment—he did take it in payment, and has not ventured to call a single witness to prove that it was not worth every dollar due under the mortgage. After all this, to allow him to escape from the legitimate consequences of his own solemn acts, by such a subterfuge, would be contrary to the plainest principles of law, of equity, and of common sense. For these reasons I am of opinion the law is with the plaintiff on the third question reserved.

[Heath *v*. Page.]

"June 25th 1864, the prothonotary is directed to enter judgment on the verdict in favour of the plaintiff, on payment of the verdict fee."

The defendant thereupon sued out this writ, and assigned here the following matters as reasons for reversing the judgment of the court below :—

1. The formal overruling of defendant's points. 2. The refusal of the court to instruct the jury that if they were satisfied, from the written propositions of settlement, the written contract of 28th of August 1861, the deed in pursuance of it, the satisfaction of the mortgage of the 19th of January 1858, and the parol evidence in relation to the admissions of Page that the parties consummated said contract as a settlement and compromise of all claims upon either side arising out of the transaction of loan between them, their verdict should be for defendant ; and that if the jury believe the bond and mortgage of 20th February 1856, were at the instance of the plaintiff surrendered and satisfied, and a new bond and mortgage, dated the 19th January 1858, given, covering other property, and with different terms of payment, such surrender and satisfaction of said bond and mortgage would amount to a discharge and payment of the original indebtedness, the usury, if any, would be then complete, and the plaintiff, having failed to bring suit within six months thereafter, would be barred by the Statute of Limitations from a recovery. 3. In instructing them "that the satisfaction of this mortgage (of 20th February 1856) was not understood or intended by either of the parties as a payment of the debt secured by it, is abundantly manifested by the uncontradicted evidence in the cause. More especially is the defendant precluded from making such an allegation by his written agreement under seal, dated 24th November 1857, which expressly declares the object to be to release the lien on the mortgaged premises, to enable Page to sell and convey the same. The whole transaction can be regarded in no other light than as a change of securities, without the slightest intention that it should work an extinguishment and satisfaction of the debt. For these reasons I am clearly of opinion that the Statute of Limitations did not begin to run when the first mortgage was satisfied." 4. In refusing to charge that the true construction of the contract of 28th of August 1861, and the deed of Page and wife of the 13th December 1861, which must be taken together, is, that as Heath discharged Page from all debts, claims, demands, and suits arising out of said bond and mortgage of the 19th January 1858, upon condition that Page would give him a conveyance for the land agreed upon, the making of said deed, and the satisfaction of the mortgage, operated as mutual discharges from all further liabilities arising out of or connected

[Heath v. Page.]

with the before-mentioned obligations.   5. In refusing to charge that the deed of Page and wife to Heath, being the voluntary act of the parties, in which they acknowledge the receipt of $12,500 as the consideration, which sum includes the value of the stock of the road aforesaid, must be taken as an acknowledgment, at that time, of the validity of the stock purchase.   After such solemn recognition by Page and wife of the validity of said purchase of stock, and receipting for it in their deed to Heath as lawful money of the United States, it would be against equity and good conscience to allow Page to recover in this case, as it would be substantially allowing him to recover a portion of the very purchase-money which he acknowledges he received from defendant.   6. In refusing to charge the jury that Page having adopted the stock in question as a part consideration for the sale of land, cannot recover in this action without proof of tender to defendant of said stock before suit brought, and having, as appears by the stock-book and the evidence of Mr. Fetterman, assigned, in March 1862, three thousand dollars of said stock to third persons, and thereby put it out of his power to return it, it would be unconscionable to allow him to recover the amount he gave for it, and at the same time sell and pocket the proceeds or keep the same.   7. In refusing to charge the jury that plaintiff having failed to bring his action within six months from the 28th August 1861, the time when the contract for the purchase of the land was complete, he is not entitled to recover.   8. In refusing to instruct the jury that plaintiff has misconceived his action, debt being the only remedy to enforce a statutory obligation; and this action, being in case, cannot be sustained without showing a tender of the stock to defendant before suit brought.   9. In refusing to answer, in any way, defendant's 11th point, viz., that Page having held the stock from 1856 until 1861, with full knowledge or opportunities of knowledge of its value, and having then appropriated it as part payment of the consideration of the land sold defendant, in the absence of evidence of fraud, or imposition in the contracts of 21st August 1861, he is not entitled to recover.   10. In refusing to charge that the contract of the 28th of August 1861, was a merger of all the others which preceded it; and as by this contract the defendant was to take land for the money and stock he had previously given the plaintiff, and was to stand the risk and hazard of the land depreciating below the value of said stock and money, he was equally entitled to any sum to which it might appreciate beyond the amount of the indebtedness of plaintiff, without being subject to the penalties or the liabilities of the usury law.   11. In rejecting the following offer: Defendant offers to prove by John Heath that Page, the plaintiff, repeatedly called and requested Judge Heath, the defendant, to take land

in full satisfaction and settlement of the controversies and claims between them, and the final acceptance by Judge Heath before the written propositions were made on either side, for the purpose of showing that the contract of 28th August 1861 was a contract of settlement of all controversies, and also for the purpose of showing that Page was the party who first proposed the giving of land in settlement of all claims.

*S. A. Purviance*, for plaintiff in error.

*H. Burgwin*, for defendant in error.

The opinion of the court was delivered, January 2d 1865, by

WOODWARD, C. J.—This was an action on the case to recover a sum of money alleged to have been paid upon a usurious contract, and in excess of legal interest. The first objection taken to plaintiff's right of recovery was, that the suit was not brought within six months after the payment of the usury, but there was no plea of the Statute of Limitations upon the record. The 2d section of the Act of 28th May 1858, Purd. 561, contains such a limitation of the right of action, but a defendant who means to avail himself of it should plead it. I suppose it to be a general principle, that all Statutes of Limitations, to be available, should be pleaded. They may be waived by the persons for whose benefit they were made, and unless pleaded upon record, plaintiffs have a right to presume a waiver, and to come to trial unprepared with evidence to meet such ·a defence. The action of ejectment is the exceptional case in which the Statute of Limitations may be set up under a plea of the general issue, but it required an Act of Assembly to establish this exception. Whenever a statute does not authorize it, an act of limitation, which is a bar to the action and does not touch the merits, cannot be put in under the general issue.

If this were not so, however, we should have no difficulty in concurring both in the reasons and the conclusions of the learned judge below upon the point now before us. He held that the satisfaction of the first mortgage was not payment and receipt of usury, from which the six months would begin to run, but that it was a mere release of lien and substitution of one security for another, and this he inferred from the tenor of the paper signed by Heath, and dated the 24th of November 1857. It is hard to see how this conclusion can be doubted, for what said Heath in that paper? After reciting the mortgage he held against Page, he declares his motive—"That Page may, if possible, make a sale of his interest on the most advantageous terms, and then agrees, on such sale being made, he will release and satisfy the mortgage, provided that the said Page shall procure me other

good and abundantly safe real security for the whole amount now due on said mortgage, payable at the end of ten years from this date, with interest payable semi-annually."

Was satisfaction of the mortgage under such an agreement, payment of the debt? On the contrary, was not the debt, the "whole amount" of it, to survive for ten years on the pledge of other "abundantly safe real security?" There does not seem to be room for two opinions upon this point. If Heath's carefully-considered written words mean anything, a change of securities, and not an extinguishment of the debt, was the thing intended.

But counsel would have had the question submitted to the jury. Whether satisfaction and discharge of a particular security be payment of the debt is a question of intention, and ordinarily belongs to the jury, because, ordinarily, the intention is to be collected from a variety of circumstances; but where it is deducible from a written document, it is the province of the court to deduce it, because the construction of all writings belongs to the court rather than the jury. We see no error in this part of the record.

The usuriousness of the original contract seems not to have been much contested, and was readily found by the jury upon ample proofs, but under the Act of 1858, the borrower could have no action to recover back the excessive interest stipulated for, until he had "voluntarily paid the whole debt or sum loaned, together with interest, exceeding the lawful rate," and the plaintiff, to make out such payment, relied on the agreement and letter of 10th August 1861, the agreement of 28th August 1861, the deed of Page and wife to Heath of 13th December 1861, and Heath's entry of satisfaction of 14th April 1862. The defendant maintained that these transactions amounted to a compromise and release of the plaintiff's cause of action, and if they did not, that they were not a "*payment*" of "*usury*" within the meaning of the statute. This was the principal battle-ground.

To keep a clear view of it before our minds, it is necessary to remember that the first mortgage of 1856 was given upon the usurious consideration, that that mortgage was substituted by the mortgage of 19th January 1858, which was for the "whole debt," and of course upon the same usurious foundation as the first mortgage, and that the town-lots in Birmingham were conveyed by the deed of 13th December 1861, in satisfaction of this last mortgage.

First, then, as to the alleged compromise and release of right of action. The agreement of 28th August 1861 imports that the conveyance of the lots was to be a "full satisfaction and payment of all claims and demands against said Page and wife," under the existing bond and mortgage and the suit thereon, but there is not a syllable about Page giving up any cause of action

he had or might' have against Heath. Indeed, as to Heath, it was only a release of such actions as arose out of the mortgage, but, as to Page, it was a release of no cause of action whatever. Nor did the testimony of Mr. Keenan prove anything to restrain Page's suit. There had been considerable negotiation about the mortgage—suit had been commenced, and judgment thereon taken for $12,567.90, and, says Mr. Keenan, as the result of all his interviews with Page, "a desire to close amicably the controversy I was managing, was the idea impressed on my mind from his manner and conversation." And again, "the substance of what he said was the expression of a desire to close up all controversy." "The carrying out of the written agreement was the subject-matter of these conversations." The controversy Mr. Keenan was managing, and the written agreement alluded to, related to the mortgage, and these were the subjects to which Page's expressions were applicable. They had no reference, and ought to have no application to his cause of action not existing then, but which arose subsequently when he had paid the usury. Doubtless he might release it upon a sufficient consideration, but we see not a spark of evidence that he said anything about releasing it.

Next, was the conveyance of the Birmingham lots, payment of the usurious contract? Heath agreed in the paper of 28th August 1861, that "they should be full satisfaction and payment" of that contract; and said McKean, C. J., in Musgrove *v.* Gibbs, 1 Dall. 237, "it is well established that the receipt of one thing in satisfaction of another is a good payment." This was said of the payment of notes of hand by other notes, and in a *qui tam* action, under the penal provisions of our old Act of Assembly against usury. It was attempted in the argument to apply the doctrine of Musgrove *v.* Gibbs to the satisfaction of the first mortgage, but the evidence of substitution instead of payment was irresistible, and hence this principle could not be applied there. But here it is applicable, for, if a debt may be paid in something else than the legal currency of the country, it may be paid in land, and if a debt may be paid in land, then Heath was so paid. Under the plea of payment, evidence of payment in specific articles, not money, is constantly received in our practice: Hamilton *v.* Moore, 4 W. & S. 570; Richabaugh *v.* Dugan, 7 Barr 394. Payment is a matter of agreement; whatever the parties intend for payment, is payment. Set-off rests on mutual dealings, regardless of the intentions of parties, but when a debt shall be considered as extinguished, and what equivalent shall be received in lieu of it, whether money, cattle, or land, are questions of intention, and the law esteems that a payment which the parties have treated as payment. And what would be payment

in pleading and evidence generally, is payment under the statute of 1858.

But if the Birmingham lots were payment of the mortgage, when did they become payment? at the date of the agreement to convey them, or at the delivery of the conveyance? This is a very material question to the plaintiff's right of action, for more than seven months elapsed between the agreement of August 1861 and the delivery of the deed. The lots belonged to Mrs. Page, and though she signed the agreement, with her husband, she acknowledged no instrument in the forms of law until the deed was made. The deed took effect only from the time of delivery, which was in April 1862. Then it was that Mrs. Page's title vested in Heath, and then it was that he satisfied the mortgage of record. Prior to that time the parties rested on the agreement to convey; on the 14th April 1862 they consummated the conveyance, and extinguished the mortgage. Had Page called on Heath to satisfy the mortgage before that date, the latter might well have replied that he was not yet paid his debt, for that nothing less than the deed of Page and his wife, duly acknowledged and delivered, could be payment in pursuance of the agreement. We think, therefore, that the court was altogether right in holding the mortgage paid by the conveyance of the lots, and that the date of the payment was the delivery of the deed, which was within six months before the institution of this suit. Nor is there any ground for the complaint that the court construed those papers and declared their legal effect, instead of submitting them to the crude speculations of the jury.

But it is claimed that the railroad stock which entered into the original loan should have been returned before suit brought, or at the least that it should have been credited to Heath at its present value. It is impossible for us to say what value the jury attached to the stock. The money loaned by Heath to Page in 1856 was $5000, the sum at which he took the lots in 1862 was $12,000, and the jury found a verdict for Page of $7400. The stock was the cloak of the usury. It was put into the original bargain at $5000, but was worthless at the time, or nearly so. There was evidence that it had improved some since. Was it necessary for Page to return the stock as a precedent condition to his right of action? We think not. He had bargained for and bought it at an exorbitant rate, to be sure, but his title was none the less complete for this reason. Though the taint of the contract, it was an essential ingredient of the contract; without it Heath would not have made the loan. Page never disaffirmed the contract, but performed it to the satisfaction of Heath by the conveyance of the Birmingham lots. It was thenceforth a fully-executed contract, and the purchased stock became absolutely Page's property. He might have retained

Heath *v.* Page.]

and deducted whatever sum would have expressed the excess over legal interest, and paid only the balance, but he "voluntarily paid the whole debt," and thereby entitled himself to an action under the Act of Assembly. It is not an action in disaffirmance of the contract, nor upon an inchoate title, but it is in pursuance of the contract, and upon a title to the excessive interest which is complete. When such contracts are made they are made under and subject to the law of 1858. Its provisions interpenetrate all usurious contracts. The lender as well as the borrower is bound to know what the law of his contract is, and after he has accepted full performance of it at the hands of the borrower, it ill becomes him to insist that the borrower should reinstate him in the condition he was before the contract was made, instead of visiting him with the consequences which he knew the statute had annexed to all such bargains. The action has no other effect than to reduce the contract to the legal standard of interest. It does not disaffirm, avoid, or contradict the contract, but only razees it down to lawful proportions. No return of the stock, therefore, or offer to return it, was necessary as a condition precedent to the action. The plaintiff qualified himself to bring such an action, when he voluntarily made full performance of the contract, and that was full performance which the defendant accepted as such.

Whether the stock was counted at anything in making the verdict, we have no means of knowing. If it had any value this ought to have been ascertained, and allowed in adjusting the amount of the verdict. Judging from the amount of the verdict, we would think the stock was thrown out as worthless, and if it was, we will not say, for it is not proper to decide the point now, whether Heath can still recover it back. If included at any price, it would seem to us that the verdict was too large, but the remedy for this was a new trial, and not a writ of error.

It is said the action was misconceived, that it should have been debt and not case. The Act of 1858 does not prescribe the form of action; indeed, it does not expressly give the right of action, but only impliedly, from the limitation imposed. The action is not for a statutory penalty, but it is to recover back an excess of interest voluntarily paid upon a usurious contract. It is necessarily founded upon the special circumstances of the case, and therefore there is no misconception in bringing an action on the case.

When it is added that John Heath's testimony was properly rejected as irrelevant, we have sufficiently noticed all the legal propositions contained in the assignments of error.

The judgment is affirmed.